PICHE, Respondent, vs. COTTOR, Appellant.

*December 18, 1907—January 8, 1908.*

*Appeal and error: Conflicting evidence: Findings: Conclusiveness:
Deeds: Mental incapacity.*

Where on conflicting evidence the trial court has set aside a deed
because of the mental incompetency of the grantor, and it can-
not be said that the court failed in any way to give the evidence
its proper weight or reached a wrong conclusion, the judgment
will be affirmed.

APPEAL from a judgment of the circuit court for Polk
county: A. J. VINJE, Circuit Judge. *Affirmed.*

In March, 1904, Francois Pequignot, at the age of eighty-
five, executed a will bequeathing all his real estate to the de-
fendant, a stepdaughter, and at the same time executed a
deed to her of his farm, of the value of about $3,000, condi-
tioned upon care and support during his life. The plaintiff
is his only child, and the defendant and one sister, Mrs.
Maitrejean, are stepdaughters, who were small children upon
his marriage to their mother and were brought up by him as
daughters. His wife had died just before the making of
these instruments. The defendant had gone to his house in
October preceding and had cared for him since then. He
died in August, 1904. This action was brought to set aside
said deed on the ground of mental incompetence and undue
influence. The court found that at the time of the execution
of the said papers, and for eight months or more immediately
preceding, said grantor had been suffering from an advanced
stage of senile dementia and also from insane delusions that
his daughter, *Josephine Piche,* and her husband had mis-
treated him and stolen property from him, and that they
and the stepdaughter, Mrs. Maitrejean, had already received
a share of the property; that by reason of such senile demen-
tia and resultant insane delusions he was mentally incompe-

tent to dispose of his property at the time the deed in question was executed by him.    In accordance with such finding, judgment was entered setting aside said deed, from which the defendant appeals.

*James A. Frear,* for the appellant.

For the respondent there was a brief by *H. H. Gillen* and *W. F. M'Nally,* and oral argument by *Mr. M'Nally.*

Dodge, J.    No good purpose can be served by rehearsing the details of this controversy.    Very much evidence was given of greater or less cogency.    There were many considerations of equity to support this conveyance.    It was pursuant to contract made in October, 1903, if deceased could contract; and defendant had faithfully performed her contract.    Much time was spent in ventilating the relations of the deceased towards the respective members of his family and their conduct towards him.    We have read the evidence with great care, and it is somewhat peculiar in this, that in the main the specific facts offered on the different sides of the controversy are largely undisputed by any witness, and substantially the only conflict of evidence is over the inference to be drawn as to his sanity from such conflicting facts.    We think that if certain events occurred on the one side, at least in the manner they are asserted, they show the impossibility of some of the events testified to on the other side.    Those accompanying the transaction of the making of this deed are quite sufficient by themselves to show mental capacity to dispose of property.    But upon the other side are offered multitudinous events, circumstances, and conduct of the deceased which, if true, justified an inference by the trial court that it was impossible for him to have knowingly done the acts to which the defendant's witnesses testified.    In such situation the questions of credit to be given the several witnesses, either for veracity or for full and intelligent observation and description of that which they saw and attempted to narrate,

were for the trial court. We confess that the narrative of deceased's acts at the time of the execution of the conveyance, if given by witnesses trained to observe and to discriminate between active mental direction and mere apparent acquiescence without sane appreciation of the meaning of his acts, would be difficult of escape. But the quality of those witnesses for fairness, for ability to observe and appreciate, and to intelligently narrate was much more within the observation of the trial court than of this. There has grown up, as the result of experience in this state, the rule so often stated, that unless it appears that the trial court has, for some reason, not properly performed his function of considering and deciding upon conflicting evidence, this court will not interfere with his action, and while, in some instances, that may result in confirming a wrong conclusion, it is believed that in the overwhelming majority of cases it will promote justice. In deference to that rule, now so thoroughly established, we feel that we cannot say that we have an abiding certainty that the court failed in any way to give the evidence its proper weight or that he reached a wrong conclusion.

*By the Court.*—Judgment affirmed.